UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMED ARAFI,

             Plaintiff,

    v.

MANDARIN ORIENTAL,

             Defendant.

Civil Action No. 11-1553 (BJR)

MEMORANDUM OPINION

**GRANTING IN PART & DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

## I.  INTRODUCTION

This matter is before the court on Defendant's motion to dismiss. Plaintiff, a Muslim individual from Morocco and of "Arab ancestry," alleges that his employer, the Mandarin Oriental Hotel Group ("the Hotel" or "Defendant"), discriminated against him on the basis of his race, color, religion and national origin in violation of various federal and state anti-discrimination laws. Plaintiff further alleges that Defendant retaliated against him for complaining about such discrimination. Because Plaintiff fails to allege a materially adverse employment action, the court grants Defendant's motion with respect to his discrimination claims. On the other hand, because Plaintiff has successfully alleged retaliation claims, the court denies Defendant's motion as to those claims.

## II.  BACKGROUND

The following factual summary assumes Plaintiff's allegations to be true. Plaintiff, a Muslim of "Arab ancestry," was born in Morocco and is now a United States citizen. Compl. ¶ 5. Since 2009, he has worked as a valet dry cleaner in the Mandarin Oriental Hotel located in

Washington, D.C. *Id.* ¶ 9. In this position, Plaintiff enters guests' rooms to gather and deliver dry cleaning. Plaintiff often receives tips from the guests that he serves. *Id.* ¶ 12.

An Israeli delegation stayed on the eighth and ninth floors of the Hotel from December 10, 2010 to December 12, 2010. Compl. ¶¶ 15,17. Plaintiff maintains that the delegation is a regular guest of the United States Department of State and has stayed at the Hotel on various occasions over the past several years. *Id.* ¶ 16.

On December 10, 2010, Plaintiff's direct supervisor, Ms. Escander, told Plaintiff that he was not allowed to provide services to those guests on the eighth and ninth floors. *Id.* ¶ 17. When pressed by Plaintiff for further explanation, Ms. Escander allegedly stated, "You know how the Israelis are with Arabs and Muslims." *Id.* According to Plaintiff, he complied with these instructions for the remainder of his shift and was deprived of the tips from the guests on those floors. *Id.* ¶ 18.

Upon speaking to his coworkers later that evening, Plaintiff learned that the Hotel had also ordered other employees who were either Arab or Muslim to refrain from entering the floors occupied by the Israeli delegation. *Id.* ¶ 20. According to Plaintiff, his coworkers went on to explain that Ms. Escander had issued similar instructions on past occasions when the Israeli delegation had stayed at the Hotel. *Id.* Plaintiff further claims that several of his coworkers later "ridiculed [him] as a potential terrorist, poking him in the stomach to feign checking his body for explosives." *Id.* ¶ 22.

The following day, December 11, 2010, Plaintiff met with another supervisor to complain about the previous day's events. *Id.* ¶ 21. In response, that supervisor allegedly stated that "the Israeli delegation [did] not want to be served by [the Hotel's] Muslim employees and that [the Hotel] accommodates this preference because it does not want to lose the Israeli delegation as clients." *Id.* After the Israeli delegation had already left the Hotel, on December 13, 2010,

Plaintiff spoke to Ms. Escander and again complained of his restricted access to the eighth and ninth floors. *Id.* ¶ 24. According to Plaintiff, Ms. Escander explained that "the Israeli delegation is very selective about who serves them" and that the Hotel had to accommodate those desires, including which hotel workers would serve them. *Id.* ¶ 25. Ms. Escander allegedly stated that the Israeli delegation did not want to "encounter any Muslim persons while staying at [the] hotel" and suggested that the delegation had specifically refused Plaintiff's services because his first name was Mohammed. *Id.*

According to Plaintiff, approximately one week later, he met with Ms. Escander and the Hotel's Director of Human Resources for the Hotel. *Id.* ¶ 28. Plaintiff reiterated his complaints about the prior week's events. *Id.* In response, the Director of Human Resources advised Plaintiff that the Department of State had conducted background checks on the Hotel's employees in anticipation of the Israeli delegation's visit.[1] *Id.* ¶ 28. These background checks had raised some "irregularities" as to Plaintiff and eleven other hotel employees. *Id.* The Director indicated that the Hotel did not know what these "irregularities" entailed, explaining that this was a decision made by the Department of State. *Id.*

From December 19, 2010 to January 20, 2011, the Hotel scheduled Plaintiff to work for only one day. *Id.* ¶ 30. According to Plaintiff, before December 19, 2010, he regularly worked five to seven days per week. *Id.* Plaintiff remains employed at the Hotel. *Id.* ¶ 9.

Plaintiff commenced this suit alleging disparate treatment and retaliation in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1866 and 1870, as amended and codified at 42 U.S.C. § 1981; and the District of Columbia Human Rights Act ("DCHRA"), codified at D.C. Code Ann. § 2-1401.01 *et seq. See*

---

[1] Defendant points out that Plaintiff previously stated in an intake interview with the Equal Employment Opportunity Commission ("EEOC") that the defendant informed him of the State Department's decision on the same day that the alleged discrimination occurred. Def.'s Reply at 11 (citing Pl.'s Opp'n, Ex. B at 4).

3

*generally* Compl.  Defendant now moves to dismiss.  With the motion ripe for consideration, the court addresses the parties' arguments and the applicable legal standards.

### III.  ANALYSIS

#### A.  Legal Standard - Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. 44, 47-48 (D.D.C. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also* FED. R. CIV. P. 12(b)(6).  Ambiguities must be resolved in favor of Plaintiff, giving him the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in the complaint.  *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. at 47-48.

To survive a Rule 12(b)(6) motion, the complaint must plead sufficient facts that taken as true provide "plausible grounds" that discovery will reveal evidence to support Plaintiff's allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when Plaintiff pleads factual content that allows the court to draw the reasonable inference that Defendant is liable for the alleged misconduct."  *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570)).  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Id.* (citation omitted).  Although the court must construe the complaint in a light most favorable to Plaintiff, the court is not

required to accept factual inferences that are unsupported by facts or legal conclusions cast in the form of factual allegations. *City of Harper Woods Emps' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009). The court's function is not to weigh potential evidence that the parties might present at a later stage, but to assess whether the pleading alone is legally sufficient to state a claim for which relief may be granted. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

### B. The Court Grants Defendant's Motion with Respect to Plaintiff's Disparate Treatment Claims

#### 1. Legal Standard - Disparate Treatment

Title VII bars discrimination "because of . . . [an] individual's race, color, religion, sex, or national origin." *Ponce v. Billington*, 2012 U.S. App. LEXIS 10025, at *6 (D.C. Cir. May 18, 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)). Thus, a plaintiff can establish liability by "proving that a protected characteristic was a but-for cause of the adverse employment action." *Id.* Typically, a plaintiff establishes but-for causation using a legal framework commonly referred to as the *McDonnell Douglas* test. *Id.* The first step of this framework, and the only one at issue here, requires that Plaintiff "prove a prima facie case of discrimination." *Id.* "[T]o state a prima facie claim of disparate treatment discrimination, Plaintiff must establish that (1) []he is a member of a protected class; (2) []he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).

Alternatively, a plaintiff may prevail under Title VII by showing that unlawful discrimination was "a factor motivating the adverse action," *i.e.*, a "mixed motive" case. *Ponce*,

2012 U.S. App. LEXIS 10025, at *6 (quoting *Ginger v. District of Columbia*, 527 F.3d 1340 (D.C. Cir. 2008)).  As with but-for causation, a plaintiff can also use evidence of pretext and the *McDonnell Douglas* framework to prove a mixed-motive case.  *Id.*

Disparate treatment claims brought under 42 U.S.C. §1981 and the DCHRA are routinely scrutinized using this legal framework for Title VII claims.  *See Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1413 n.7 (D.C. Cir. 1988) (noting that "the standards and order of proof in [§] 1981 cases have been held to be identical to those governing Title VII disparate treatment cases" (citing *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225 (D.C. Cir. 1984))); *Atl. Richfield Co. v. D.C. Comm'n on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986) (noting that "[i]n an employment discrimination case where disparate treatment is alleged, [the District of Columbia Court of Appeals] has adopted the . . . allocation of the burdens of proof under Title VII of the Civil Rights Act of 1964").

### 2. Plaintiff Fails to State an Adverse Employment Action to Sustain His Disparate Treatment Claims

"In order to present a viable claim of discrimination under Title VII, a plaintiff must show he suffered an adverse employment action."  *Douglas v. Preston*, 559 F.3d 549, 551-552 (D.C. Cir. 2009).  An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  *Id.* (citations omitted). Stated otherwise, "[a]n employee must experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  *Id.* (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (internal quotation marks & alterations omitted))).  In sum, "significant" or "objectively tangible" is required.  *Id.*  Moreover, the D.C. Circuit has

"consistently classified" discrete episodes of "public humiliation or loss of reputation" as "falling below the requirements for an adverse employment action." *Id.*; *see also Stewart v. Evans*, 275 F.3d 1126, 1135-36 (D.C. Cir. 2002) (determining that Plaintiff's claims that supervisors "intentionally and perfidiously created the appearance that Plaintiff and her staff were involved in violations of court orders and obstruction of justice" did not amount to adverse employment action without further effects on salary or employment status).

Defendant argues that removing Plaintiff's service from the eighth and ninth floors during a single shift does not constitute an adverse employment action. Def.'s Mot. at 3. According to Defendant, Plaintiff fails to allege that he experienced any tangible change in his work duties or conditions or suffered any reduction in pay or benefits. *Id.* at 19.

In response, Plaintiff argues that barring him from servicing the eighth and ninth floors deprived him of receiving tips from those two floors. Pl.'s Opp'n at 13-15. Moreover, Plaintiff claims that he is "suffering a permanent alteration" of his work duties because the Israeli delegation is a frequent visitor at the Hotel and its return is likely to result in further "restriction on his ability to serve all guest rooms and obtain income from tips."[2] *Id.* at 16.

Defendant replies that the amount of tips that Plaintiff might have received is trivial, noting that Plaintiff earned a total of $133.00 in tips for the entire year of 2010.[3] Def.'s Reply at

---

[2]   Plaintiff also argues, albeit without any supporting case law, that he is not required to plead an adverse employment action for a mixed-motive discrimination case. Pl.'s Opp'n at 17-18. The D.C. Circuit recently delved into the intricacies of a mixed-motive case, explaining that a plaintiff may "prevail by showing that unlawful discrimination was 'a factor motivating the *adverse action*.'" *Ponce v. Billington*, 2012 U.S. App. LEXIS 10025, at *7-8 (D.C. Cir. May 18, 2012) (quoting *Ginger v. District of Columbia*, 527 F.3d 1340, 1345 (D.C. Cir. 2008)) (emphasis added). In light of this clear statement of law and of any lack of authority indicating otherwise, the court determines that a plaintiff must plead an adverse employment action, even with a mixed-motive case.

[3]   Defendant also argues that any tips received by an employee in the hotel's Housekeeping Department must, according to hotel policy, be shared among all other employees who worked that same day. Def.'s Reply at 12. The court does not consider this alleged fact, raised for the first time in Defendant's reply.

11. Defendant further argues that any ongoing harm is purely speculative because Plaintiff's employment has not been "restricted in any way during the fourteen months since the December 10, 2010 incident." [4] *Id.* at 13. The court finds Defendant's argument to be persuasive.

During the three days that the Israeli delegation lodged at the Hotel, Plaintiff was allowed to service all but two floors of the Hotel. Therefore, the maximum amount of lost earnings was the amount of the tips that he would have earned had he serviced the additional two floors. Plaintiff has not pled any facts that would give the court reason to believe that such tips would amount to any more than the normal amount for valet dry cleaning tips, a few dollars per guest room. Although the denial of a monetary bonus (like a tip) may constitute an adverse employment action, the potential tips at issue here are of a *de minimus* amount, the deprivation of which cannot rise to the level of an adverse employment action. *Compare Dickerson v. Sectek*,

---

[4] Defendant also contends that "this court lacks jurisdiction to review the circumstances of the hotel's actions because the hotel is entitled to Title VII's National Security exemption." Def.'s Mot. at 9. Under pertinent Title VII case law, a court cannot adjudicate a Title VII claim if doing so requires reviewing the merits of a security clearance decision by the executive branch. *See e.g.*, *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999). The issue, however, is one of justiciability as opposed to jurisdiction. *Oryszak v. Sullivan*, 576 F.3d 522,526 (D.C. Cir. 2009) ("That a plaintiff complains about an action that is committed to agency discretion by law does not . . . mean, therefore, [that] the court lacks subject matter jurisdiction."). *But see Rattigan v. Holder*, 643 F.3d 975, 982 (D.C. Cir. 2011) (declining to address whether the government's justiciability argument in a Title VII case is non-jurisdictional). Because Plaintiff's disparate treatment claims fail due to a lack of a material adverse employment action, the court need not decide whether the security clearance decision by the Department of State precludes review based on non-justiciability grounds as well. *Oryszak* at 576 F.3d at 526-27 (Ginsburg, J., concurring) (stating that a court must be careful to distinguish between justiciability and jurisdiction and concluding that "a court need not necessarily resolve [justiciability issues] before addressing the merits" and may, for example, dismiss a case for failure to state a claim while reserving the question whether that sort of claim presents a nonjusticiable political question"). Indeed, it is the prudent course to decline to reach the defendant's national security exemption arguments – issues that are inextricably intertwined with separation of powers issues. *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) ("It is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.")

*Inc.*, 238 F. Supp. 2d 66, 76 n.4 (D.D.C. 2002) (concluding that the difference between one day's pay and one day's overtime pay "could well be described as a *de minimus* loss of pay" and therefore not actionable under Title VII) *with Russell v. Principi*, 257 F.3d 815, 819 (D.C. Cir. 2001) (explaining that "the loss of a bonus that is worth hundreds of dollars is not a petty detriment").

Therefore, even drawing all reasonable inferences in favor of Plaintiff, the court cannot conclude that his loss of potential tips from the eighth and ninth floor during three days in December 2010 amounts to a materially adverse employment action.  *See Embry v. Callahan Eye Found. Hosp.*, 147 F. App'x 819, 829 (11th Cir. 2005) (holding that an employee's one-day suspension resulting in a loss of $88.73 did not constitute "a serious and material change in the terms, conditions, or privileges of employment"); *Rivers v. Potter*, 2007 U.S. Dist. LEXIS 92590, at *20-21 (D.N.J. 2007) (determining that the denial of a single instance of overtime work did not constitute an adverse employment action that impacts the terms, conditions, or privileges of employment sufficiently to sustain a prima facie case for discrimination under Title VII).  Similarly, the alteration of Plaintiff's job responsibilities in barring him from the eighth and ninth floors for three days was a temporary and minimal reduction in work responsibilities that also does not rise to the level of material adversity.  *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (holding that minor "inconveniences and alteration of job responsibilities do not rise to the level of [an] adverse action"); *see also Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (explaining that Title VII requires material adversity because "it is important to separate significant from trivial harms); *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006) ("Not everything that makes an employee unhappy is an actionable adverse action").

Finally, Plaintiff asks the court to consider that the Israeli delegation may return in upcoming years and request dry cleaning services during the exact time when Plaintiff would be scheduled to service the delegation's guest rooms but would again be barred from doing so. Such a potential reoccurrence of this sequence of events is too speculative to constitute a material adverse action. *See Douglas v. Preston*, 559 F.3d 549, 553 (D.C. Cir. 2009) (noting that the effect of an employer's actions is at times "too speculative to be actionable"). Accordingly, Plaintiff has not alleged an adverse employment action that sustains a prima facie case for disparate treatment under Title VII, and the court dismisses his disparate treatment claims.[5]

### C. The Court Denies Defendant's Motion with Respect to Plaintiff's Title VII and DCHRA Retaliation Claims

Defendant moves to dismiss Plaintiff's Title VII and DCHRA retaliation claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[6] Def.'s Mot. at 24. Defendant first argues that this court lacks jurisdiction to review Plaintiff's retaliation claims because Defendant's actions were taken pursuant to national security requirements. *Id*. at 25. Defendant further asserts that even if jurisdiction exists, Plaintiff has not alleged that he engaged in a *statutorily* protected activity because its actions were lawful under Title VII. *Id.* More specifically, Defendant contends that its actions were lawful because it was simply following the Department of State's directives. *Id.* at 27. Finally, Defendant adds

---

[5] To be clear, the court dismisses all of Plaintiff's disparate treatment claims, including claims of discrimination based on race, color, religion, and national origin.

[6] Defendant also moves to dismiss Plaintiff's DCHRA claims based on his prior decision to seek relief through the District of Columbia Office of Human Rights ("OHR"). Def.'s Mot. at 13-14. Plaintiff responds that he filed a complaint with the EEOC that was cross-filed with OHR, at which point OHR deferred its jurisdiction to the EEOC and declined to investigate. Pl.'s Opp'n at 6. Notwithstanding a plaintiff's prior filing of a complaint with the OHR, a plaintiff is allowed to bring an action in court if the OHR dismisses the complaint for "administrative convenience." *Carter v. District of Columbia*, 980 A.2d 1217, 1223 (D.C. 2009) (citing D.C. Code § 2-1403.16(a)). Because Plaintiff's OHR claim was dismissed on the ground of administrative convenience, *Ibrahim v. Unisys Corp.*, 582 F. Supp. 2d 41, 46 (D.D.C. 2008) (explaining that a dismissal on administrative convenience grounds results from OHR's automatic termination of a complaint that was originally filed before the EEOC), Plaintiff's DCHRA claims are not barred.

in a conclusory fashion that because Plaintiff "has not sufficiently alleged that he engaged in [a] statutorily protected activity," Plaintiff "cannot assert any causal connection" between the protected activity and the adverse employment action. *Id.*

According to Plaintiff, the Department of State's security determination has no bearing on his retaliation claims. Pl.'s Opp'n at 22. Plaintiff further submits that he has adequately pled a statutorily protected activity because Plaintiff complained, upon good faith and reasonable belief, that his supervisors were discriminating against him in violation of Title VII. *Id.* at 24-25. Lastly, Plaintiff argues that he adequately pleads causation by alleging that Defendant only scheduled Plaintiff for one day of work from December 19, 2011 to January 20, 2011, as a result of Plaintiff's earlier complaints. *Id.* at 26.

As a threshold matter, the court determines that the national security exemption does not immunize Defendant from liability as to Plaintiff's retaliation claim. Title VII's national security exemption shields employers from liability for employment decisions made in the interest of national security. *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 8 (D.D.C. 2004). A Title VII claim is nonjusticiable if reviewing it requires the court to review the merits of a decision by the executive branch regarding a security clearance. *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999). Here, Plaintiff alleges that as a result of his complaints of discrimination, Defendant purposefully did not schedule him for shifts starting on December 19, 2011, approximately one week after the Israeli delegation departed the Hotel. The court's review of this retaliation claim would not require any consideration of the merits of the Department of State's background screening decision. Thus, the court concludes that the national security exemption does not make Plaintiff's retaliation claim non-justiciable.[7] *See Rattigan v. Holder*, 643 F.3d 975, 981

---

[7] The defendant argues that the court lacks jurisdiction due to the national security exemption. As elaborated earlier, even if the exemption applied (and it does not), it does not deprive the court of jurisdiction, but rather makes the claim non-justiciable. *See supra* n.4.

(D.C. Cir. 2011) (holding that the court may adjudicate a retaliation claim because it did not implicate a security clearance decision by the Executive Branch).

Next, the court turns to whether Plaintiff successfully pled his retaliation claims. Title VII and the DCHRA prohibit an employer from retaliating against an employee for asserting his rights under Title VII. *Calhoun v. Johnson*, 632 F.3d 1259, 1261 (D.C. Cir. 2011). Thus, to establish a prima facie case of retaliation, a plaintiff must first allege that he engaged in a statutorily protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006). The D.C. Circuit has interpreted this to mean that an employee may not be punished for opposing a practice that he or she "reasonably and in good faith believed was unlawful under [Title VII]." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).

As a fundamental matter, Plaintiff correctly maintains that he "is not required to prove that his protected activity consisted of complaints of actual actionable discrimination," and instead, must only demonstrate that he complained of unlawful discrimination. Pl.'s Opp'n at 25. In other words, whether or not Plaintiff's complaints regarding his employer's discriminatory behavior are actionable under Title VII does not determine the viability of his retaliation claims. Instead, Plaintiff's retaliation claim survives so long as he alleges facts that support that he made complaints to the Hotel's management about what he perceived to be his supervisor's discriminatory behavior. *See McGrath*, 666 F.3d at 1380. The complaint alleges that Plaintiff complained to a supervisor about "discriminatory treatment," a reasonable grievance considering the alleged facts. *See* Compl. ¶ 21. Drawing all inferences in favor of Plaintiff, the court determines that Plaintiff has successfully alleged that he engaged in protected activity when he complained of discrimination, thereby satisfying the first element of the Title VII and DCHRA retaliation claims. *See Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (explaining that "[n]ot every complaint garners its author protection under Title VII"

and that "no 'magic words' are required, [but] the complaint must in some way allege unlawful discrimination").

With respect to the second element of a retaliation claim, a plaintiff must allege an action taken by his employer in response to his complaints that a reasonable employee would find materially adverse. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67-69. This includes any harm that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011). Here, Plaintiff alleges that Defendant only scheduled him to work one day during the month that followed his discrimination complaints, whereas previously he had worked anywhere from five to seven days per week. *See* Compl. ¶ 30. Plaintiff further claims that this "drastic[] curtail[ment]" of his scheduled hours came as a "response to [the p]laintiff's complaints about the discriminatory treatment to which [the d]efendant subjected him." *Id.* Plaintiff's reduction in work schedule for a month would have reasonably been accompanied by a non-trivial reduction in pay. Thus, Plaintiff has successfully alleged an objective tangible harm so as to constitute a material adverse action supporting the Title VII and DCHRA retaliation claims.[8] *Khin Maung Than v. Radio Free Asia*, 496 F. Supp. 2d 38, 49 (D.D.C. 2007) ("[A] reasonable employee would consider that a reduction in work hours (and the resulting reduction in pay) . . . to be materially adverse actions.").

### D. The Court Denies Defendant's Motion with Respect to Plaintiff's Retaliation Claim Under 42 U.S.C. § 1981

Defendant argues that because the "[p]laintiff has failed to allege facts demonstrating that his race was the reason for the Hotel's actions," and because § 1981 only makes actionable

---

[8] To the extent that Defendant argues that no causal connection exists because no material adverse action can be shown, the court also denies these arguments.

13

retaliation that stems from asserting one's rights against racial discrimination, the court should dismiss Plaintiff's § 1981 retaliation claim for failure to state a claim. Def.'s Reply at 22-23.

Section 1981 allows a plaintiff to raise a retaliation claim if the retaliation was in response to Plaintiff's assertion of rights protected by § 1981. *See Fair Employment Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1279-1280 (D.C. Cir. 1994) ("Implicit in § 1981 . . . is a cause of action protecting people from private retaliation for . . . exercising their own § 1981 rights."); *Perkins v. Fort Lincoln II Condo. Ass'n*, 2011 U.S. Dist. LEXIS 56957 (D.D.C. May 27, 2011) ("[T]o be actionable under § 1981, the retaliation must have been in response to the claimant's assertion of rights that were protected by § 1981."). In turn, § 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981. Section 1981 also protects individuals against discrimination based solely on one's "ancestry or ethnic characteristics." *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (holding that Congress intended § 1981 to forbid discrimination based on "Arab ancestry" regardless of whether or not that classification could be called a race under modern-day terminology). Finally, the elements of a prima facie case of retaliation under § 1981 are identical to those of a Title VII retaliation claim. *Bryant v. PEPCO*, 821 F. Supp. 2d 304, 304-307 (D.D.C. 2011).

In his complaint, Plaintiff alleges that he complained to his supervisor, Ms. Escander, about the "discrimination" that he encountered on December 10, 2010. Compl. ¶ 24. Plaintiff's supervisor allegedly responded by asking him to be "cognizant of the hostility that Israelis have toward Arabs and Muslims." *Id.* ¶ 25. Plaintiff later met with the Director of Human Resources to "complain about the treatment he received." *Id.* ¶ 28. Lastly, Plaintiff alleges that his work hours were reduced "in response to [his] complaints about the discriminatory treatment to which

14

[the d]efendant subjected him." *Id.* ¶ 30.  Drawing all reasonable inferences in favor of Plaintiff, the court determines that – although far from a model of clarity – Plaintiff's complaint advances sufficient facts to support his racial discrimination claim.  Accordingly, the court denies Defendant's motion to dismiss Plaintiff's § 1981 retaliation claim.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Defendant's motion to dismiss.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 6th day of June, 2012.

June 6, 2012

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE